UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAUNCEY M. MAHAN,<br><br>    Plaintiff,<br><br>    v.<br><br>JUAN PEREZ, et al.,<br><br>    Defendants. | Case No.16-cv-02024-JST<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: ECF Nos. 24, 27, 86, 88 |

Before the Court are four separate motions to dismiss, ECF Nos. 24, 27, 86, 88, and several related requests for judicial notice, ECF Nos. 26, 85, 87, 89, 90, 91, 92, 93, 108. For the reasons stated below, the motions to dismiss and the requests for judicial notice are granted.

I.    **REQUESTS FOR JUDICIAL NOTICE**

Two of the four motions to dismiss are accompanied by requests for judicial notice. Although a court's review on a motion to dismiss is generally limited to the allegations in the complaint, the Court may properly take judicial notice of material attached to the complaint and of matters of public record pursuant to Federal Rule of Evidence 201. Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001). A court may thus take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, but it may not take judicial notice of a fact that is subject to reasonable dispute. Id. at 689. A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2); see Sato v. Wachovia Mortg., FSB, No. 11–cv–00810–EJD (PSG), 2011 WL 2784567, at *2 (N.D. Cal. July 13, 2011).

In support of their motion to dismiss, Defendants Reed Smith, LLC, Miles Cooley, and Jordan Siev request that the Court take judicial notice of various court documents filed in Mahan

v. Roc Nation, No. 14-cv-5075, a related case before Judge Lorna Schofield in the Southern District of New York (the "SDNY litigation"), and Mahan v. City of Los Angeles, No. PC 58925, a related case Mahan filed in California state court. ECF Nos. 26, 85. Defendant Juan Perez makes a similar, though more expansive, request. ECF No. 87, 108. Finally, Plaintiff Chauncey Mahan filed several documents styled as requests for judicial notice, which contain a variety of court filings and emails. ECF Nos. 89, 90, 91, 92, 93.[1]

To the extent the parties seek judicial notice documents filed by the parties or the court in either the SDNY litigation or the related California state court case, the Court finds the documents appropriate for judicial notice as documents in the public record not reasonably subject to dispute, because their accuracy can readily be determined from sources whose accuracy cannot reasonably be questioned. Accordingly, the Court grants Defendants' requests for judicial notice, ECF Nos. 26, 85, 87, 108; grants Mahan's request at ECF Nos. 89 and 90; grants in part and denies in part Mahan's request at ECF No. 91; denies Mahan's request at ECF No. 92; and denies Mahan's request at ECF No. 93.

## II. MOTIONS TO DISMISS

### A. Factual Background

For purposes of deciding these motions to dismiss, the Court accepts as true the following allegations from Plaintiff's First Amended Complaint ("FAC"), ECF No. 3. Moyo v. Gomez, 40 F.3d 982, 984 (9th Cir. 1994).

Plaintiff Chauncey M. Mahan is a sound engineer. ECF No. 3 at 7. From August 1999 to November 2000, "agents" of non-party Universal Music Group ("UMG"), including Roc-A-Fella Records, LLC and Shawn Carter (popularly known as Jay Z), commissioned Mahan as "an independent contractor." In this capacity, Mahan "contributed to the making of forty-one (41) individual sound recordings." Id. at 9. In November 2000, Mahan allegedly "transmitted a notification" to various UMG agents that he possessed various "multi-track sound records"[2]

---

[1] Docket No. 93 was also filed as a request for judicial notice but is actually a certificate of service.
[2] The Court refers to these recordings as "the Media" for purposes of this order.

2

related to this work, but received no response. Id. at 10.

Fourteen years later, Mahan contacted Roc Nation, LLC, a "full service entertainment company" organized by Carter, about the recordings he still had in his possession.[3] In response, Miles Cooley, a Reed Smith, LLC attorney representing Roc Nation, met with Mahan at his Los Angeles storage unit to "catalog[] the valuable items that were in [Mahan's] possession." ECF No. 3 at 10. The next day, a Cooley lawyer called the Los Angeles Police Department ("LAPD") "and convince[d] them (somehow) that [Mahan] should be arrested for being in 'Possession of Stolen Property.'" Id. at 11. LAPD then seized the Media from Mahan's storage unit. Id.

### B. Related Litigation in the Southern District of New York

In 2014, Mahan filed a complaint in the Southern District of New York against Roc Nation, Rock-A-Fella Records, and Carter based on this series of events. ECF No. 87-1. Mahan sought a declaratory judgment that he was the author and copyright owner of the Media, and claimed that the defendants had conspired to commit conversion and had committed trespass to chattel. Id. In his complaint, Mahan stated that he "was not arrested by police in connection with the April 18, 2014 incident." Id. In April 2015, the SDNY court dismissed all of Mahan's claims, concluding that they were untimely. ECF No. 87-2. The parties dispute whether this order expressly decided who owned the Media. The Second Circuit affirmed the court's dismissal order, but did not address ownership of the Media. ECF No. 87-4. Back in district court, Rock-A-Fella requested a final determination awarding it the ownership of the Media, which Mahan opposed. On August 9, 2016, the district court issued an order concluding that Mahan had "no ownership interest in the copyrighted sound recordings contained in the media" and granting Rock-A-Fella ownership and possession of the Media (the "SDNY Ownership Order"). ECF No. 87-15.

---

[3] The parties dispute the content of this communication. Perez claims Mahan "demanded that Roc Nation pay him a $100,000 'storage fee' for keeping the [Media], or else Mahan would auction off the songs." ECF No. 87-4. Mahan claims he simply notified Defendants that the Media was in his possession and might soon be auctioned off from his storage unit. ECF No. 98 at 49. The Court assumes as true Mahan's version of the facts for purposes of this order.

3

### C. Procedural Background

Meanwhile, in April 2016, Mahan filed the instant action in the Northern District of California. Although the facts alleged are nearly identical to those in the New York case, Mahan names a different set of Defendants: 1) Juan Perez, an executive officer of Roc Nation; 2) the law firm Reed Smith, LLC, and two of its then-attorneys (the "Reed Smith Defendants"); 3) the City of Los Angeles and four LAPD officers (the "LAPD Defendants"); and 4) the City of New York and three New York Police Department ("NYPD") officers (the "NYPD Defendants"). ECF No. 3 at 1. Mahan claims these parties violated his equal protection and due process rights under the United States, New York, and California Constitutions and seeks over one hundred million dollars in damages. Id. at 13-14. At bottom, Mahan alleges that he was falsely arrested and that his property was wrongfully confiscated, and that each Defendant played a role.

Defendants have filed four motions to dismiss. First, on June 3, 2016, the Reed Smith Defendants moved to dismiss, arguing that 1) Mahan's various constitutional claims fail because the Reed Defendants are not state actors, 2) the SDNY Ownership Order collaterally estops Mahan from any claims arising out of his alleged property loss, and 3) Mahan cannot make any claims arising out of his alleged arrest because he "twice claimed in court papers that he was not arrested." ECF No. 24. Second, the LAPD Defendants moved to dismiss a few days later, claiming that Mahan's complaint should be dismissed for improper venue. ECF No. 27. Third, Defendant Perez filed his motion to dismiss on September 12, 2016. ECF No. 86. Perez's motion makes many of the same estoppel arguments as the Reed Smith Defendants' motion, and also asserts that res judicata bars Mahan's claims against Perez because he already unsuccessfully sued Perez's employer, Roc Nation, in the Southern District of New York. Id. Fourth, the NYPD Defendants moved to dismiss on September 12, 2016. ECF No. 88. That motion argues that Mahan's New York state law claims must be dismissed for failure to comply with a state law requiring him to file a "notice of claim" within 90 days of the alleged incident. All four motions additionally argue that Mahan's complaint is "devoid of factual allegations that would plausibly entitle [him] to relief." See, e.g., id. at 4.

**D.     Legal Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).

**E.     Analysis**

Mahan's claims all rest on two alleged incidents: 1) the confiscation of his property from the Los Angeles storage unit, and 2) his false arrest." ECF No. 3. The Court grants the motions to dismiss as to all Defendants because Mahan is barred from making claims arising out of either incident.

### 1.     Property Confiscation

The Court concludes that the SDNY Ownership Order collaterally estops Mahan from making any claims stemming from the LAPD's confiscation of the Media from his storage unit. In the Ninth Circuit, the doctrine of collateral estoppel precludes re-litigation of an issue when three criteria are met:

> (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated by the party against whom preclusion is asserted in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.

McQuillion v. Schwarzenegger, 369 F.3d 1091, 1096 (9th Cir. 2004) (internal quotations and alterations omitted).

First, the issue at stake here – whether Mahan owns the confiscated Media – is identical to the issue in the SDNY litigation. In his FAC, Mahan asserts that his "property was illegally

confiscated" and that Defendants conspired to "unconstitutionally hold [his] property without due process of law." ECF No. 3 at 12. These arguments are premised on the claim that Mahan owned and controlled the Media and the sound recordings contained within them. This is the very issue that Mahan litigated and lost in New York. In that case, the defendants (Roc Nation, Roc-A-Fella Records, and Carter) filed an application for an order of forfeiture awarding Roc-A-Fella possession of the same Media that Mahan alleges belongs to him in the present case. ECF No. 146. Mahan's argument that the earlier SDNY order dismissing his claims, later affirmed by the Second Circuit, did not address ownership is simply not credible given that the SDNY erased any doubt in its subsequent Ownership Order.[4] Therefore, the first element is satisfied.

Second, the question of who owned the Media was "actually litigated by" Mahan, the party against whom preclusion is asserted." McQuillion, 369 F.3d at 1096. After the defendants in the SDNY litigation filed their application for an order of forfeiture, Mahan responded, and the court held a hearing. ECF No. 87-15 at 2. Only then did the court grant the defendants' application and find that "Mahan has no ownership interest in the copyrighted sound recordings contained within the Media." Id. at 5. That this decision resulted from an "adversarial" proceeding weighs in favor of the application of collateral estoppel. See In re Gottheiner, 703 F.2d 1136, 1140 (9th Cir. 1983). So does the fact that Mahan had a "full and fair opportunity" to litigate the ownership question. Maciel v. C.I.R., 489 F.3d 1018, 1023 (9th Cir. 2007). Mahan had every reason to vigorously contest Rock-A-Fella's ownership of the Media in response to its application for an order of forfeiture. Id. Therefore, the Court need not decide whether the district court had already decided the question of ownership in its earlier order, later affirmed, that dismissed Mahan's claims on timeliness grounds.

Third, the ownership question was a "critical and necessary part of the judgment" in the SDNY litigation. McQuillion, 369 F.3d at 1096. In its order granting the SDNY defendants possession and ownership of the Media, the court specifically stated that "pursuant to 17 U.S.C.

---

[4] Mahan's attempt to distinguish the sound recordings contained in the Media versus the Media itself likewise fails because the Ninth Circuit has interpreted 17 U.S.C. § 503(b) to permit confiscation of "the whole of the paraphernalia" even if the items "may be used for other purposes." Duchess Music Corp. v. Stern, 458 F.2d 1305, 1309 (9th Cir. 1972).

§ 503(b), as part of the final disposition of an action brought under the United States Copyright Act, this Court may order the reasonable disposition of all 'masters, tapes . . . or other articles' from which infringing copies or phonorecords may be reproduced, as well as any equipment that may be used for purposes of infringement." ECF No. 87-15 at 6. Explicitly determining who owned of the Media was necessary to fully resolve the dispute between Mahan and the SDNY defendants, even after the district court had granted the motions to dismiss.

Ninth Circuit case law also requires that the issue have been "finally" decided. Luben Indus., Inc. v. United States, 707 F.2d 1037, 1039 (9th Cir. 1983). This does not mean final "in the sense of 28 U.S.C. § 1291"; rather, "the proper query here is whether the court's decision on *the issue as to which preclusion is sought* is final." Syverson v. Int'l Bus. Machines Corp., 472 F.3d 1072, 1079 (9th Cir. 2007). The SDNY Ownership Order satisfies this test. It says: "IT IS HEREBY ORDERED as a part of the *final disposition* of this action that ownership and possession of [the Media] is awarded to Defendant Rock-A-Fella Records, LLC." ECF No. 146 at 5 (emphasis added). The fact that Mahan can appeal this order does not change the Court's analysis because "a final judgment retains its collateral estoppel effect, if any, while pending appeal." Collins v. D.R. Horton, Inc., 505 F.3d 874, 882 (9th Cir. 2007).

In sum, Mahan is precluded from arguing that he owned the Media confiscated from his Los Angeles storage unit, and by extension from making any claims arising out of that property.

### 2. False Arrest

Mahan's claims, however, stem not only from the confiscation of the Media, but also from his alleged false arrest. This assertion, too, is barred by Mahan's own prior representations in court.

"Judicial estoppel is an equitable doctrine invoked by a court at its discretion. Its purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." Ah Quin v. Cty. of Kauai Dep't of Transp., 733 F.3d 267, 270 (9th Cir. 2013) (internal citations and alterations omitted). The Supreme Court has identified three salient considerations that "typically inform the decision whether to apply the doctrine in a particular case":

7

> First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

New Hampshire v. Maine, 532 U.S. 742, 750–51 (2001). The Court clarified that these considerations are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel" and that "[a]dditional considerations may inform the doctrine's application in specific factual contexts." Id. at 751.

Here, all three factors weigh in favor of the application of judicial estoppel. First, contrary to Mahan's current position that he was falsely arrested, in the SDNY litigation and in another case he filed in California state court, Mahan claimed that he was not arrested in connection with the confiscation of his property. For example, in his First Amended Complaint in the SDNY litigation, Mahan alleged that he "was not arrested by police in connection with the April 18, 2015 incident." ECF No. 87-1.[5] Similarly, in the related California state court case, Mahn claimed not to have been arrested in both his Complaint and in his response the defendants' demurrer. ECF No. 26-3 at 8, 54. These positions—one that Mahan was arrested and one that he was not—are "clearly inconsistent." Second, Mahan persuaded the SNDY to accept his earlier position that he was not arrested. In its order dismissing Mahan's claims, the court explained that "Mahan was not arrested or charged with any crimes related to the incident" where the Media was confiscated. ECF No. 87-2 at 3. For this Court to conclude now that Mahan was in fact arrested would "create the perception that either the first or the second court was misled." New Hampshire, 532 U.S. at 751. The third factor weighs less strongly in favor of estoppel. Though common sense suggests it would be unfair to Defendants to allow Mahan to change his story about whether he was arrested, Defendants make no argument that Mahan would derive any sort of "unfair advantage" from doing so, aside from the obvious advantage of preserving his claims arising out of that arrest.

---

[5] Mahan's response that he meant "not charged" when he said "not arrested" makes little sense given that the next paragraph in his SDNY FAC states: "As of the date of the filing of this complaint, Mahan has not been charged with any crime . . . ." Id. If Mahan had meant charged, when he said arrested, he would not have needed this second, duplicative paragraph.

8

Considering these three factors, two of which weigh strongly in favor of estoppel, the Court concludes that Mahan is barred from making any claims arising out of his alleged false arrest.

To summarize, collateral estoppel bars Mahan's claims arising out of the seizure of his property, while judicial estoppel bars any claims arising out of his false arrest. Mahan's FAC is premised entirely on these two factual allegations. Therefore, the Court grants Defendants' motions to dismiss.[6]

### F. Dismissal with Prejudice

"Dismissal of a pro se complaint without leave to amend is proper only if it is clear that the deficiencies of the complaint could not be cured by amendment," and "a court cannot dismiss a pro se complaint without first explaining to the plaintiff the deficiencies of the complaint and providing an opportunity to amend." Frey v. United States, 122 F.3d 1071 (9th Cir. 1997). Moreover, in the absence of factors such as "undue delay, bad faith or dilatory motive," leave to amend should be freely given. Foman v. Davis, 371 U.S. 178, 182 (1962).

This Order will serve as the Court's explanation to Mahan of the deficiencies of his complaint. The Court is skeptical that Mahan will be able amend to cure these deficiencies given that this Order effectively prohibits him from making any claims based on his ownership of the Media or his "arrest." Nonetheless, because Mahan has not yet sought leave to file an amended complaint, the Court concludes that providing an opportunity to amend is appropriate.

Any amended complaint must be filed within twenty-one days of the date of this order. Failure to comply with this order will result in dismissal with prejudice.

IT IS SO ORDERED.

Dated: December 5, 2016

_____
JON S. TIGAR
United States District Judge

---

[6] Because the Court's estoppel findings apply to all Defendants, the Court does not address the various Defendants' alternative arguments for dismissing Mahan's FAC.

9